IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DAWN ALEXANDER,

      Plaintiff,

v.                                No. 14-1022

TONY M. BYRD, Deputy Sheriff
for Gibson County, Tennessee,
individually; GIBSON COUNTY
SHERIFF'S DEPARTMENT;
GIBSON COUNTY, TENNESSEE;
CHAD LOWREY, Chief of Police for
City of Medina, Tennessee,
individually; JASON McCALLISTER,
Police Officer for City of Medina,
Tennessee, individually, and CITY OF
MEDINA, TENNESSEE,

      Defendants.
_____

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS BY DEFENDANTS, TONY M. BYRD, GIBSON COUNTY
SHERIFF'S DEPARTMENT, AND GIBSON COUNTY, TENNESSEE
_____


      Plaintiff, Dawn Alexander, brought this action against Gibson County, Tennessee; the

Gibson County Sheriff's Department; the City of Medina, Tennessee; Tony M. Byrd, Deputy

Sheriff for Gibson County; Chad Lowrey, Chief of Police for Medina; and Jason McCallister, a

Medina police officer, in a complaint filed on January 28, 2014, alleging violations of 42 U.S.C.

§ 1983 and Tennessee tort law. (Docket Entry ("D.E.") 1.) Before the Court is the June 5, 2014,

motion of Defendants Byrd, the Gibson County Sheriff's Department, and Gibson County (the

"County Defendants") to dismiss the complaint for failure to state a claim pursuant to Federal

Rule of Civil Procedure 12(b)(6), (D.E. 23), to which Plaintiff has responded, (D.E. 28).

# I. Legal Standard

Rule 12 permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, a district court should "construe [the] complaint in the light most favorable" to the non-moving party and accept all "well-pled allegations as true." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010) (citing *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). A claim is well-pled when "it contains 'either direct or inferential allegations respecting all material elements' necessary for recovery under a viable legal theory." *Phil. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Terry*, 604 F.3d at 275–76). The facts in the complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Terry*, 604 F.3d at 275–76). The complaint, therefore, must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

# II. Facts Alleged

Plaintiff made the following allegations in her complaint. On January 28, 2013, Alexander went to her son's home in Gibson County, Tennessee, where she saw three law enforcement vehicles in the driveway of her sister's house, located next-door. (D.E. 1 at ¶ 12.) Plaintiff then went to her sister's house and encountered Defendants Byrd, Lowery, and

McCallister, as well as two other officers, several of whom began yelling at her. (*Id.* at ¶¶ 12–18.) After Alexander noticed that her nephew was under arrest and complied with McCallister's request that she step to the side of the driveway, the officers, at the direction of Lowery and Byrd, arrested her. (*Id.* at ¶¶ 20–26.) In the process, McCallister grabbed her right arm, forced her left arm behind her back, and attempted to force her right arm behind her back while Lowery simultaneously pulled forward on her purse, which she carried over her right shoulder. (*Id.* at ¶¶ 21–23.) After the purse was removed, McCallister pulled her right arm behind her back, handcuffed her, pulled up on the handcuffs, and applied pressure to her shoulders, causing her to run down the driveway to the hood of a police car. (*Id.* at ¶¶ 23–27.) He then frisked her and placed her in the back of the vehicle. (*Id.* at ¶ 28.) The force used during the arrest resulted in pain and injury to Plaintiff requiring medical treatment. (*Id.* at ¶ 27.)

About 30 to 45 minutes later, McCallister entered the police car and informed Alexander that she was being arrested for assaulting him, that he had made the arrest at Lowery's direction, and that she would spend the night in the Gibson County Jail. (*Id.* at ¶¶ 29–30.) He then took an indirect route to the jail, causing Plaintiff to become fearful. (*Id.* at ¶ 32.) Throughout the ride, McCallister also yelled at and taunted her. (*Id.* at ¶¶ 30, 33.) Upon arriving at the jail, Alexander was booked, processed, and placed in a holding area until her attorney obtained her release later that night. (*Id.* at ¶¶ 34–35.)

The same day as these events, Byrd, on behalf of the Medina Police Department and the Gibson County Sheriff's Department, filed two affidavits of complaint in Gibson County General Session Court charging Plaintiff with resisting arrest and assaulting a police officer. (*Id.* at ¶ 36.) The prosecutor informed Alexander's attorney that the Medina Police Department

strongly opposed dropping the charges. (*Id.* at ¶ 40). Later at the preliminary hearing, however, the court dismissed the charges for lack of probable cause. (*Id.* at ¶ 42.)

### III. Analysis

Plaintiff asserts claims under 42 U.S.C. § 1983 arising out of violations of her rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.* at ¶ 46.) She also alleges that Defendants' actions constituted battery, assault, false imprisonment, malicious prosecution, and intentional infliction of emotional distress under state law. (*Id.* at ¶¶ 53–73.)

1. *42 U.S.C. §§ 1983 and 1988*

   a. *Plaintiff's Complaint*

Alexander maintains that the Defendants are liable under §§ 1983 and 1988 for violations of her rights under the federal constitution. (*Id.* at ¶¶ 45–52.) She claims that the Defendants arrested, detained, and initiated criminal proceedings against her without probable cause or a reasonable belief that their actions were justified. (*See id.*)

   b. *Applicable Law*

Chapter 42, section 1983 of the United States Code was enacted to "protect[] citizens from violations of their federal rights by state officials." *Bradley v. Reno*, 749 F.3d 553, 558 (6th Cir. 2014). "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). To invoke these remedies, "a plaintiff must set forth facts that, when construed favorably, establish (1) the

deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A municipality or other local governmental entity is considered a "person" under the statute and may therefore be held liable for its actions depriving a plaintiff of her federal rights—commonly referred to as "*Monell* liability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). However, a municipality, including a city or county governmental entity, will not be liable simply because it employs the alleged tortfeasor. *Id.* ("We have consistently refused to hold municipalities liable under the theory of *respondeat superior*."). Instead, "liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation[.]" *Heyerman*, 680 F.3d at 648 (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)); *see also Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013) ("A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom or if a failure to train amounts to deliberate indifference to such rights." (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004)) (internal quotation marks omitted)). Thus, "[u]nder § 1983, local governments are responsible only for their own illegal acts" and will not be held vicariously liable for the actions of their employees. *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

A plaintiff may invoke a custom, policy, or practice sufficient to state a claim for *Monell* liability by alleging either: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence

of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence to federal rights violations." *D'Ambrosio*, 747 F.3d at 386 (alteration in original) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Under the first category of municipal liability, a government's "official policies" have been described as including "decisions of its duly constituted legislative body," *Bryan Cnty.*, 520 U.S. at 403, as well as policies "officially adopted or established through the decision-making channels," *Doe v. Claiborne Cnty., Tenn. ex rel. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996). Under the second, "[a] single decision can constitute a policy, if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). This "means that [the official's] decisions [must be] 'final and unreviewable and . . . not constrained by the official policies of superior officials.'" *Id.* at 175 (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005)). The third category applies "[i]n limited circumstances, [where] a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights . . . rise[s] to the level of an official government policy for purposes of § 1983." *Connick*, 131 S. Ct. at 1359. Under the last category, a "custom" is a practice that "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," even though it is not formally approved. *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495–96 (6th Cir. 2008) (quoting *Bryan Cnty.*, 520 U.S. at 403–04); *see also Doe*, 103 F.3d at 508 ("In short, a 'custom' is a 'legal institution' not memorialized by written law." (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993))).

Plaintiffs may also bring § 1983 claims against public officials acting in their individual capacities. Unlike in municipal liability, a "plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted). There exists, however, no supervisory liability "where the allegation of liability is based upon a mere failure to act." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)) (internal quotation marks omitted). The official "must have actively engaged in unconstitutional behavior." *Id.* "[A] plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving[,] or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg*, 715 F.3d at 174 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

### c. *Claims Against the Gibson County Sheriff's Department*

As a threshold matter, the County Defendants move to dismiss all claims against the Gibson County Sheriff's Department because the Department is not a legal entity subject to suit. (D.E. 23). The Court agrees. While 42 U.S.C. § 1983 creates liability for "municipalities and other local government units," *Monell*, 436 U.S. at 690, a police or sheriff's department is generally not an entity capable of being sued under the statute. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding that, under Kentucky law, a police department is not an entity capable of being sued); *see also Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007) (holding that, under Ohio law, a sheriff's office is not an entity capable of being sued). Although the Sixth Circuit has never squarely decided the issue under Tennessee law, federal district courts have repeatedly applied *Matthews* and held that plaintiffs cannot maintain actions against Tennessee police and sheriff's departments under § 1983. *See, e.g., McKinney v.*

*McNairy Cnty., Tenn.*, 1:12-CV-01101, 2012 WL 4863052, at *3 (W.D. Tenn. Oct. 11, 2012); *Newby v. Sharp*, 3:11-CV-534, 2012 WL 1230764, at *3 (E.D. Tenn. Apr. 12, 2012); *Mathes v. Metro. Gov't of Nashville and Davidson Cnty.*, No. 3:10-CV-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010).[1] Therefore, the County Defendants' motion to dismiss the Gibson County Sheriff's Department as a party to this action is GRANTED.

    d. *Claims Against Gibson County*

    As previously discussed, Gibson County may only be liable if Plaintiff's constitutional rights were violated as a result of a county custom, policy, or practice. *Heyerman*, 680 F.3d at 648. In her complaint, the only direct reference she makes to any custom, policy, or practice of Gibson County is the allegation that "[a]t all times material to this action, Defendants, their agents and employees [sic] acted under color of law, statute, custom and usage of the State of Tennessee, Gibson County, and the City of Medina." (D.E. 1 at ¶ 47.) After the Supreme Court's decisions in *Twombly* and *Iqbal*, district courts in this circuit have repeatedly granted Rule 12(b)(6) motions on *Monell* claims where, as here, plaintiffs have made no more than bald assertions that their rights were violated pursuant to a policy, practice, or custom of a municipality. *See, e.g.*, *Minick v. Metro. Gov't of Nashville*, 3:12-CV-0524, 2014 WL 3817116, at *2 (M.D. Tenn. Aug. 4, 2014) ("The court recognizes that presenting municipal liability claims is more difficult after *Twombly* and *Iqbal*, but the prevailing view within this circuit and within this district is that allegations that essentially amount to notice pleading of a municipal liability claim are insufficient."); *Morris v. City of Memphis*, 11-2928, 2012 WL 3727149, at *3 (W.D. Tenn. Aug. 27, 2012) ("Plaintiff's claims regarding Defendant's custom, policy, or

---

[1] Indeed, Plaintiff appears to have conceded this point in her response and seemingly offered to voluntarily dismiss her claims against the Gibson County Sheriff's Department. (D.E. 28 at 2.) However, such a motion has not been forthcoming.

practice concerning the misbehavior of the rank and file of its police force amount to legal conclusions unaccompanied by additional factual assertions. Thus, Plaintiff's allegations simply recite the elements of a § 1983 claim."); *Cunningham v. Cleveland Police Dep't.*, 1:10-CV-453, 2010 WL 5636778, at *6 (N.D. Ohio Dec. 22, 2010), *report and recommendation adopted*, 1:10-CV-453, 2011 WL 234050 (N.D. Ohio Jan. 24, 2011) ("Although Plaintiff suggests that he will provide convincing proof of the City's unconstitutional policy at trial, that proffer does not negate Plaintiff's duty pursuant to Fed. R. Civ. P. 8 to plead facts plausibly showing that the City acted unlawfully at the pleading stage."). As in these cases, Plaintiff has simply failed to include facts supporting a § 1983 claim against Gibson County. Likewise, Alexander has not sufficiently pled a plausible *Monell* claim under any of the four circumstances identified in *D'Ambrosio* and *Burgess*.

Additionally, Deputy Sheriff Byrd's alleged involvement in the events at issue would not, in itself, give rise to *Monell* liability for Gibson County. A single action of an official can give rise to municipal liability only where "that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Flagg*, 715 F.3d at 174–75 (quoting *Pembaur*, 475 U.S. at 480–81). The official's decisions must be "final and unreviewable and . . . not constrained by the official policies of superior officials." *Miller*, 408 F.3d at 814 (quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)). The mere fact that the official has "authority to exercise discretion while performing particular functions" is insufficient. *Id.* Here, Plaintiff has not claimed that Byrd has such authority over any relevant action. (*See* D.E. 1.) In addition, nothing from the complaint suggests that his decisions were final and unreviewable or that they exceeded mere discretionary authority.

As a result, Plaintiff's allegations amount, at most, to a "threadbare recital" of a § 1983 claim against Gibson County and are therefore insufficient to state a claim against it. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[2] Therefore, the County Defendants' motion to dismiss the § 1983 claims against Gibson County is GRANTED.

e. *Rights Violated Under § 1983*

As to the remaining § 1983 claims, the Court must look to the individual rights Plaintiff contends were violated. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) ("'[A § 1983] analysis begins by identifying the specific constitutional right allegedly infringed . . . .'" (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989))). As to the constitutional violations Alexander alleges, the County Defendants have moved to dismiss the Eighth and Fourteenth Amendment claims. (D.E. 23 at 2; D.E. 23-1 at 8–11.) Thus, the Court will only address these assertions.

1. *Eighth Amendment*

The County Defendants move to dismiss Plaintiff's claims based on the Eighth Amendment because she was a pretrial detainee during the events in issue. (D.E. 23 at 2; D.E. 23-1 at 8–9.) The Sixth Circuit has made clear that "a pretrial detainee does not enjoy protection of the Eighth Amendment." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992)

---

[2] Plaintiff, in her response to the County Defendant's motion to dismiss, argues that discovery "regarding the policies and procedures employed by the [Gibson County] Sheriff's Department in making arrests and filing criminal prosecution[s]" will allow her to determine "whether she has a sufficient basis for maintaining a § 1983 action." (D.E. 28 at 3.) However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79; *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) ("[T]here is no general right to discovery upon filing of the complaint. The very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." (citation omitted) (internal quotation marks omitted)).

(citing *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990); *Belcher v. Oliver*, 898 F.2d 32, 35 (4th Cir. 1990); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)). While the Eighth Amendment "applies specifically to post-conviction inmates," a plaintiff held as a pretrial detainee may bring an analogous claim under the Fourteenth Amendment's Due Process Clause. *Miller*, 408 F.3d at 812 (citing *Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994); *Barber*, 953 F.2d at 235; *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)). In her response, Alexander conceded that she could not properly assert an Eighth Amendment claim and stated that she would file a motion to amend her complaint accordingly. (*See* D.E. 28 at 2.) To date, such a motion has not been filed. Therefore, to the extent Plaintiff has not already abandoned her Eighth Amendment claims, the County Defendants' motion to dismiss them is GRANTED.

### 2. *Fourteenth Amendment*

The Due Process Clause of the Fourteenth Amendment prohibits state and local governments from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The clause contains both procedural and substantive guarantees. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1635 (2013). Procedural due process generally provides that "government action depriving a person of life, liberty, or property . . . must . . . be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see also EJS Props.*, 698 F.3d at 855. Substantive due process, on the other hand, "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *Salerno*, 481 U.S. at 746) (internal alterations and quotation marks

omitted). As an initial matter, Plaintiff does not allege that her procedural rights were violated or that she should have been afforded greater procedural safeguards, therefore, her Fourteenth Amendment claim is a substantive one. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (noting that a "claim is one invoking the substantive . . . component of the Due Process Clause [where] petitioners do not claim [a lack of] . . . appropriate procedural safeguards"); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (noting that a procedural due process claim requires a showing that "the state did not afford [the plaintiff] adequate procedural rights prior to depriving him of [a protected] interest.").

Substantive due process protects against "governmental power . . . being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)) (internal alterations omitted). Courts must, however, "carefully scrutinize so-called substantive due process claims brought under § 1983 because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)) (internal quotation marks omitted). Therefore, when another provision of the Constitution "provides an explicit textual source" for protection against the alleged rights violation, it "must be the guide for analyzing [the] claims" instead of the "more generalized notion of 'substantive due process'" embodied in the Fourteenth Amendment. *Graham*, 490 U.S. at 395. When such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir.), *cert. denied*, 134 S. Ct. 341 (2013).

Here, Alexander does not clearly differentiate between her Fourth, Eighth, and Fourteenth Amendment claims. Her complaint states, in relevant part:

> The actions of Defendants Byrd, Lowery, and McCallister violated Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments to be free from arrest, imprisonment, unreasonable use of force, and prosecution in the absence of probable cause that she had violated the criminal laws of the State of Tennessee and to be free from the use of unreasonable force, defamation, injury to her person and reputation. [sic] The actions of Defendants violated Plaintiff's clearly established constitutional and statutory rights.
> . . . .
> Defendants without probable cause or a reasonable belief that their actions were justified conspired to arrest, imprison, and prosecute Plaintiff, to cause her pain and physical and emotional distress, and to defame Plaintiff's character and reputation.
> . . . .
> As a direct and proximate result of the actions of Defendants, Plaintiff was deprived of her rights, privilege [sic] and immunities guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.
> . . . .
> Defendants' actions were intentional, taken with malice, and showed a deliberate indifference to Plaintiff's rights.

(D.E. 1 at ¶¶ 48–52). To the extent that Plaintiff's Fourteenth Amendment claims encompass her assertion that she was arrested without probable cause or that excessive force was used in her arrest, the Fourth Amendment rather than the Fourteenth controls. The Fourth Amendment directly applies to arrests made without probable cause. *See Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013) ("This Court has stated the general rule that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime." (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)) (internal quotation marks omitted)). Additionally, the Supreme Court has made explicit that "[w]here . . . [an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." *Graham*, 490 U.S.

at 394. Therefore, because the Fourth Amendment provides a direct textual source for the claim, the Fourteenth Amendment's framework does not apply.

Pretrial detainees, however, may properly bring claims of an Eighth Amendment variety under the Fourteenth Amendment. *See Miller*, 408 F.3d at 812. In certain circumstances, the conditions of a pretrial detainee's confinement may be such that her Fourteenth Amendment rights are violated. *See id.* The County Defendants deny that Plaintiff has sufficiently alleged such a claim. (D.E. 23-1 at 9–10.) As written, her complaint fails to provide any detail as to the conditions of her confinement—facts that would plainly be in Alexander's possession. Therefore, the complaint does not meet the general pleading standard under Rule 8. *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted)). Plaintiff has essentially admitted this, noting in her response that she intends to amend her complaint to "clearly assert a Fourteenth Amendment claim based upon the physical and mental abuse at the hands of Defendants." (D.E. 28 at 2.) However, no such motion has been filed. The Court further notes that Federal Rule of Civil Procedure 15(a)(1)(B) provided for amendment of the complaint as of right for 21 days after the County Defendants' service of their Rule 12(b)(6) motion, a period ending on June 5, 2014. While Rule 15(b)(2) otherwise provides that the Court "should freely give leave to amend when justice so requires," the Sixth Circuit has held that a request to amend in a response to a Rule 12(b)(6) motion is *not* a proper motion to amend for purposes of Rule 15. *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) ("What plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend."); *see also* LR 7.2(a)(1), Local Rules of the United States

Dist. Ct. for the W. Dist. of Tenn. (setting forth requirements for filing a motion). For these reasons, Plaintiff has failed to state § 1983 claims for violation of her Fourteenth Amendment rights. The County Defendants' motion to dismiss these claims is, therefore, GRANTED.

### e. *Claims Under § 1988*

Alexander also seeks relief under 42 U.S.C. § 1988. (D.E. 1 at ¶ 46.) Section 1988 is essentially a provision allowing an award of fees to the "prevailing party" in a § 1983 case and certain other civil rights actions. *See Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012). Because this order does not completely dispose of Plaintiff's § 1983 claims, she may still become a prevailing party. *See Green Party of Tenn. v. Hargett*, 767 F.3d 533, 2014 WL 4116483, at *14 (6th Cir. 2014) (citing *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010)) ("[A] civil-rights plaintiff need not succeed on every claim in order to recover attorney's fees. Success on a single claim is sufficient to become a prevailing party."). However, "[l]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against . . . § 1988 does not authorize a fee award against that defendant." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Heeren v. City of Jamestown, Ky.*, 39 F.3d 628, 631 (6th Cir. 1994). Accordingly, the motion to dismiss Alexander's § 1988 claims against Gibson County and the Gibson County Sheriff's Department is GRANTED but DENIED as to those claims against Byrd.

## 2. *State Law Claims*

In addition to her § 1983 claims, Alexander alleges violations of Tennessee state law for battery, assault, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. (D.E. 1 at ¶¶ 53–73.) The County Defendants seek dismissal of those claims

against Deputy Byrd and Gibson County under the Tennessee Governmental Tort Liability Act ("GTLA"), which governs tort claims against political subdivisions of the state of Tennessee and their employees, "including [a] sheriff and the sheriff's employees." *See* Tenn. Code Ann. § 29-20-102(1)–(3). In the alternative, the County Defendants request the Court to decline jurisdiction over the state law claims under 28 U.S.C. § 1367(c). (D.E. 23 at 1–2 D.E. 23-1 at 4–7.)

The GTLA claims would typically confer supplemental jurisdiction in this Court, as they arise out of the same facts as Plaintiff's § 1983 claims and form part of the case or controversy. *See* 28 U.S.C. § 1367(a). However, "district courts have 'broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims,'" even if jurisdiction would otherwise be proper under § 1367(a). *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996), *amended on denial of reh'g*, 1998 WL 117980 (6th Cir. Jan. 15, 1998)). Under § 1367(c), a district court may decline to exercise supplemental jurisdiction if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The GTLA states that Tennessee "circuit courts shall have exclusive original jurisdiction" over claims brought under its provisions. Tenn. Code Ann. § 29-20-307. Moreover, the GTLA requires claims brought under it to be in "strict compliance" with its terms. *See* Tenn. Code Ann. § 29-20-201(c). The Sixth Circuit has recognized that "the Tennessee

16

legislature expressed a clear preference that [GTLA] claims be handled by its own state courts." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). Further, "[t]his unequivocal preference of the Tennessee legislature is an exceptional circumstance [under § 1367(c)(4)] for declining jurisdiction." *Id.*

Plaintiff contends that her state law claims do not arise under the GTLA because they are "excluded from coverage by the statute." (D.E. 28 at 9.) This argument, however, essentially asks the Court to decide at the outset whether immunity exists under the GTLA and thus fails to fully take account of the "exceptional circumstance" presented by the Tennessee General Assembly's desire that GTLA claims be heard in state court. In *Gregory*, the Sixth Circuit found dismissal of GTLA claims proper even though the district court did not make an initial determination of whether immunity would apply. *See Gregory*, 220 F.3d at 445–46 (noting that the plaintiff argued that the GTLA would have created liability "*if the acts occurred in the scope of [an officer's] employment*" (emphasis added)); *see also Underwood v. City of Memphis*, 04-2473, 2006 WL 1879737, at *9–10 (W.D. Tenn. July 6, 2006) (declining to accept jurisdiction over GTLA claims of intentional infliction of emotional distress against a county and two police officers without determining whether immunity existed). Moreover, the issue of immunity goes to the very essence of a GTLA claim. *See Kirby v. Macon Cnty.*, 892 S.W.2d 403, 406 (Tenn. 1994) ("The passage of the [GTLA] was . . . an act of grace through which the legislature provided general immunity from tort liability to all governmental entities, removing it, however, in limited and specified instances."). Therefore, this Court declines to exercise supplemental jurisdiction over Plaintiff's GTLA claims. *See Nixon v. Hardin Cnty. Bd. of Educ.*, 988 F. Supp. 2d 826, 842 (W.D. Tenn. 2013) (dismissing claims in light of Sixth Circuit's

finding that the Tennessee legislature's preference for GTLA claims to be addressed in state courts was an exceptional circumstance under § 1367(c)(4)).

Alexander argues that an alternate basis exists for waiver of Gibson County's sovereign immunity under Tenn. Code Ann. § 8-8-302, (D.E. 28 at 3–6), which provides that

> [a]nyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302. The County Defendants' motion did not address claims arising under section 8-8-302, (*see* D.E. 23; D.E. 23-1), and they did not file a reply. Consequently, the Court will not address the merits of these assertions. The Court will nevertheless examine their jurisdictional basis, as "district courts are obligated to *sua sponte* consider whether they have subject-matter jurisdiction." *Spencer v. Stork*, 513 F. App'x 557, 558 (6th Cir. 2013) (citing *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)).[3] Additionally, because Tenn. Code Ann. § 8-8-302 authorizes "suit[s] against the county in which the sheriff serves," the Court notes that the statute only applies to the state law claims against Gibson County.

Section 1367(c)(2) authorizes district courts to decline jurisdiction where the supplemental "claim[s] substantially predominate[] over the claim or claims over which the

---

[3] Although the Sixth Circuit has apparently never considered the issue, other circuits have held that a district court is not *required* to make a discretionary determination of whether to decline jurisdiction under 28 U.S.C. § 1367(c) on its own motion. *See, e.g., Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000, *supplemented*, 121 F.3d 714 (9th Cir. 1997); *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996); *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1068 (8th Cir. 1996). Nothing in these cases, however, suggests that a district court *may not* make a § 1367(c) determination *sua sponte*. Indeed, every indication is to the contrary. *See Acri*, 114 F.3d at 1001 ("[W]e emphasize that actually exercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated is a responsibility that district courts are duty-bound to take seriously."); *see also Wrack v. City of Detroit*, 2:07-CV-12196, 2007 WL 2121995, at *1–6 (E.D. Mich. July 24, 2007) (dismissing state law claims *sua sponte* under § 1367(c)).

district court has original jurisdiction." 28 U.S.C. § 1367(c)(2); *see also Sebest v. Campbell City Sch. Dist. Bd. of Educ.*, 94 F. App'x 320, 324 n.5 (6th Cir. 2004). When considering whether supplemental claims would predominate, district courts should generally consider qualitative as well as quantitative factors. 13D Charles Alan Wright, et al., *Federal Practice & Procedure: Jurisdiction* § 3567.3 (3d ed. 2014); *see also Marquis v. Tecumseh Prods. Co.*, 206 F.R.D. 132, 164 (E.D. Mich. 2002) (considering whether "state-law claims would predominate in a purely numerical sense" and differences in "the proofs involved" in the claims). Plaintiff's claims under Tenn. Code Ann. § 8-8-302 would undoubtedly predominate in light of the narrow scope of the § 1983 claims remaining in the litigation. Based on the rulings herein, the only § 1983 claim against a County Defendant that survives is one against Byrd under the Fourth Amendment. In contrast, Alexander's state law claims encompass multiple theories, (D.E. 1 at ¶¶ 53–73), which numerically outstrip those under federal law. Further, supporting the supplemental claims would require proof beyond the relatively narrow issue of whether Alexander's Fourth Amendment rights were violated during her arrest. Consequently, the state law claims would dominate at trial in a qualitative sense as well.

Section 1367(c)(4), which permits declining jurisdiction in "exceptional circumstances," also applies to Plaintiff's claims under Tenn. Code Ann. § 8-8-302. Courts and commentators have recognized that "[t]he potential for jury confusion can be a sufficiently compelling reason for declining jurisdiction" under § 1367(c)(4). *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966) (noting, before the enactment of § 1367, that the "likelihood of jury confusion in treating divergent legal theories of relief [may] justify separating state and federal claims for trial," in which case "jurisdiction should ordinarily be refused"); Wright et al., *supra*, § 3567.3 ("The

19

possibility of jury confusion might constitute an exceptional circumstance that could present a compelling reason for declining supplemental jurisdiction."). Where "the advantages to be gained by trying . . . claims together are outweighed by the potential for confusion of the issues by the jury," it is prudent for a district court to forego exercising supplemental jurisdiction. *Padilla*, 867 F. Supp. at 1316–17.

In *Padilla*, the district court declined to exercise supplemental jurisdiction under § 1367(c)(4) where the "different legal standards, rules of vicarious liability and immunity, and recoverable damages" at issue in state and federal claims were likely to confuse a jury. *Id.* at 1315. Here, several of the same concerns are present, and they counsel against an exercise of supplemental jurisdiction. Most importantly, the different standards for municipal liability in the state and federal claims would likely mislead a jury. Tennessee law creates liability for county governments for the conduct of "a deputy sheriff who was 'acting by virtue of or under color of the office.'" *Currie v. Haywood Cnty.*, W2010-00453-COA-R3CV, 2011 WL 826805, at *3 (Tenn. Ct. App. Mar. 10, 2011) (quoting Tenn. Code Ann. § 8-8-302). As previously discussed, however, Gibson County could only be held liable on § 1983 claims for action taken pursuant to a county custom, policy, or practice. *Heyerman*, 680 F.3d at 648. Trying the supplemental claims along with the federal claims, in this instance, would run a heightened risk that the jury would apply an incorrect standard to some causes of action. Moreover, Alexander brings her state law claims under a wide variety of theories, carrying with them standards different than those applicable to § 1983 claims. As one example of an area where confusion may arise, the mental state for malicious prosecution can be established by showing "that the accuser was motivated by . . . a primary purpose other than that of bringing the offender to justice." *Warren v. Columbia/HCA Healthcare Corp.*, M2000-02579-COA-R3CV, 2002 WL 554417, at * 2 (Tenn.

Ct. App. Apr. 15, 2002) (quoting *Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn. Ct. App. 1984)) (internal quotation marks omitted). Under the Fourth Amendment, however, a showing of this type of subjective intent cannot establish an element of Plaintiff's claim; only "objective reasonableness" is at issue. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014); *Sheffey v. City of Covington*, 564 F. App'x 783, 789 (6th Cir. 2014) (noting that Fourth Amendment claims use an "objective-reasonableness test, which requires . . . weigh[ing] the nature and quality of the force used against the countervailing governmental interests at stake."). When a jury is asked to make both objective and subjective inquiries, error becomes more probable. *See Padilla*, 867 F. Supp. at 1316 ("[T]he standard for the § 1983 suit is objective reasonableness, while the standard for the state assault and battery claim is subjective reasonableness. A jury could not be expected to understand and to apply the two different standards of reasonableness in the same case."). In this case, the circumstances present a scenario, when taken as a whole, where jury confusion is particularly likely.

Finally, "[i]n determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). These considerations all point towards declining supplemental jurisdiction. As Plaintiff's GTLA claims should be tried in state court, all of her state law claims could be consolidated in one proceeding if the Court does not exercise jurisdiction over the section 8-8-302 claims. This, in turn, would promote judicial economy and convenience to a degree that outweighs the minimal duplicated efforts that would result from dismissal at this early stage of the litigation. *See Gaines v. Blue Cross Blue Shield of Michigan*, 261 F. Supp. 2d 900, 905–06 (E.D. Mich. 2003) (noting that

"[t]he attempt to reconcile . . . two distinct bodies of law [in one proceeding] often dominates and prolongs pre-trial practice, complicates the trial, makes the jury instructions longer, confuses the jury, results in inconsistent verdicts, and causes post-trial problems with respect to judgment interest and attorney fees."). Separating the state law claims from the federal ones would promote fairness in the trial process by reducing the possibility of jury confusion. Likewise, considerations of comity would be best advanced if the Court does not exercise supplemental jurisdiction. A state holds a distinct interest in having its own courts determine issues of immunity for their political subdivisions. *See Wozniak v. Cavender*, 875 F. Supp. 526, 534 (N.D. Ill. 1995) ("[T]he interests of comity are best served by allowing a state tribunal to . . . address whether [the defendants'] conduct can be considered 'willful and wanton' under the Tort Immunity Act."); *see also Gregory*, 220 F.3d at 446 (noting the Tennessee General Assembly's preference that GLTA claims only be heard in state court); *Menifee v. City of Columbia*, 1:07-CV-00011, 2009 WL 1240105, at *7 (M.D. Tenn. May 4, 2009) ("The Court declines to exercise its supplemental jurisdiction over [the plaintiff's GTLA] claims on the basis of comity."). Comity would be best promoted by declining jurisdiction over claims arising under section 8-8-302, even though Tennessee's legislature has not explicitly extended its preference for state court trials to these claims as well. *See Wozniak*, 875 F. Supp. at 534.

For these reasons, the Court will not exercise its supplemental jurisdiction over Plaintiff's state law claims, and they are DISMISSED without prejudice, so as to allow her the opportunity to pursue them in state court. The County Defendants' motion to dismiss the claims under Rule 12(b)(6) is DENIED AS MOOT.

## IV. Conclusion

Based on the foregoing, the County Defendants' motion to dismiss is GRANTED IN PART. Plaintiff's § 1983 claims against the County Defendants under the Eighth and Fourteenth Amendments are DISMISSED WITH PREJUDICE. Because the Court declines to exercise supplemental jurisdiction, Alexander's state law claims against the County Defendants are DISMISSED WITHOUT PREJUDICE. Plaintiff's claims against Gibson County arising under §§ 1983 and 1988 are DISMISSED WITH PREJUDICE because she has failed to sufficiently plead *Monell* liability. Gibson County is DISMISSED as a defendant, as no claims remain against it. Because it is not a proper entity to be sued, the Gibson County Sheriff's Department is also DISMISSED. A § 1983 claim against Deputy Byrd under the Fourth Amendment and a corresponding § 1988 claim survive.

IT IS SO ORDERED this 24th day of October, 2014.


s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE