IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DAWN ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 14-1022-STA-egb |
| | ) | |
| TONY M. BYRD, Deputy Sheriff for Gibson County, Tennessee, individually, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Tony M. Byrd's Motion for Summary Judgment (ECF No. 79) filed on November 20, 2015. Plaintiff Dawn Alexander has responded in opposition, and Defendant has filed a reply brief. On March 24, 2017, the case was transferred to the undersigned for all further proceedings. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

Plaintiff filed a Complaint on January 28, 2014, alleging the violation of her constitutional rights under 42 U.S.C. § 1983 as well as claims under Tennessee law. Plaintiff brought § 1983 claims for the infringement of her Fourth and Eighth Amendment rights to be free from arrest, imprisonment, the unreasonable use of force, and prosecution without probable cause. Plaintiff also alleged claims for malicious prosecution, false arrest/imprisonment, assault and battery, and the intentional infliction of emotional distress, all under Tennessee common law. The Complaint named as Defendants Gibson County, Tennessee; the Gibson County Sheriff's Department; the City of Medina, Tennessee; Tony M. Byrd, a Gibson County deputy

1

sheriff in his individual capacity ("Deputy Byrd"); Chad Lowery, the chief of police for the City of Medina ("Chief Lowery"); and Jason McCallister, a Medina police officer ("Officer McCallister"). On October 24, 2014, the Court dismissed all of Plaintiff's § 1983 claims against Gibson County and the Gibson County Sheriff's Department and declined to exercise supplemental jurisdiction over Plaintiff's state law claims against any Defendant. However, the Court denied Deputy Byrd's motion to dismiss (ECF No. 32) the § 1983 claims against him in his individual capacity. The parties subsequently filed stipulations of dismissal (ECF Nos. 36, 48) as to the City of Medina, Chief Lowery, and Officer McCallister, as to all claims, leaving only Plaintiff's § 1983 claims against Deputy Byrd for trial.

On July 1, 2015, counsel for Deputy Byrd filed a suggestion of death (ECF No. 64) reporting the death of Deputy Byrd, and the Court granted Plaintiff's motion to substitute the administrator ad litem for Deputy Byrd's estate on February 15, 2016. Deputy Byrd now seeks judgment as a matter of law on Plaintiff's § 1983 claims against him. Pursuant to Local Rule 56.1(a), Defendant has prepared a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

The non-moving party at summary judgment is required to respond to each of the moving party's statements of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local R. 56.1(b). Additionally, the non-moving party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Where the non-moving asserts that a genuine dispute of material fact exists, the non-moving must support his or her contention with a "specific citation to the record." Local R. 56.1(b). If the non-moving fails to demonstrate that a fact is disputed or simply fails to address the moving party's statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motions. Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."). Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The Court finds that the following facts are undisputed for purposes of Deputy Byrd's Rule 56 Motion, unless otherwise noted. On January 28, 2013, Plaintiff arrived at her son's home at 21 Sitka Road in Gibson County, Tennessee. (Def.'s Statement of Undisputed Fact ¶ 1.) Upon her arrival, Plaintiff noticed police cars parked in the driveway of her sister's house at 19 Sitka Road. (*Id.*) Plaintiff parked her vehicle and walked over to her sister's house to see what was happening. (*Id.* ¶ 2.)[1] As Plaintiff walked up her sister's driveway, she saw four men

---

[1] Plaintiff has responded that this statement is disputed in part and then asserted a number of additional facts about what Plaintiff did after she noticed the police cars. The Court finds that

3

huddled behind her sister's vehicle. (*Id.* ¶ 3.) The four men were Deputy Byrd of the Gibson County Sheriff's Department and Chief Lowery, Officer McCallister, Officer Don Burress of the Medina Police Department. (*Id.* ¶ 4.) Plaintiff disputes this fact and argues that a police dashcam video recording shows that the fourth man was Hayden Green, Plaintiff's nephew, and not Officer McCallister. (Pl.'s Resp. to Def.'s Statement ¶ 4.) The dashcam video is an exhibit to Deputy Byrd's Rule 56 Motion.

Prior to Plaintiff's arrival on the scene, Officer Burress had pulled over Plaintiff's nephew Hayden Green on suspicion that Green was driving under the influence and that Green had been involved in a hit-and-run auto accident in the Medina city limits. (Def.'s Statement of Undisputed Fact ¶ 5.)[2] Shortly after Officer Burress stopped Green, Chief Lowery and Officer McCallister arrived on the scene. (*Id.* ¶ 6.) The parties disagree over whether the Medina Police Department had the authority to stop Green outside of the Medina city limits. Deputy Byrd arrived on the scene after Chief Lowery and Officer McCallister. (*Id.* ¶ 7.) The parties agree that Deputy Byrd had no authority over Chief Lowery, Officer Burress, or Officer McCalister, in that Deputy Byrd did not supervise or control Medina Police officers. The parties disagree over whether Deputy Byrd had the legal authority to stop Medina Police officers acting outside of the scope of their employment and beyond the limits of their lawful jurisdiction. (*Id.* ¶¶ 8, 9.)

---

none of the additional facts cited show that a genuine dispute exists about Defendant's statement. In fact, the Court finds that none of Plaintiff's additional facts appear about to be material to the issues presented at summary judgment.

[2] Plaintiff does not dispute that Officer Burress had pulled Green over and suspected that Green was involved in a hit-and-run accident. Plaintiff does dispute whether Officer Burress had a reasonable suspicion that Green was driving under the influence. (Pl.'s Resp. to Def.'s Statement ¶ 5.) Plaintiff points out that Officer Burress was outside of the Medina city limits and therefore outside of his jurisdiction. (*Id.*) But Plaintiff has not shown why these facts actually dispute Defendant's claim that Officer Burress suspected Green was driving under the influence.

According to Defendant, Deputy Byrd was not involved in making the traffic stop and was present at the scene simply to provide assistance to the Medina Police if necessary. (*Id.* ¶ 10.) Plaintiff cites the fact that Officer Burress requested his dispatcher to send a "county unit" out because the stop had occurred in the county, and not in the City of Medina. (Pl.'s Resp. to Def.'s Statement ¶ 10.) Plaintiff argues that Officer Burress needed Deputy Byrd to effectuate an arrest in the county. (*Id.*)

After making the stop, Officer Burress interviewed Green and conducted field sobriety tests to determine whether Green had been driving under the influence. (Def.'s Statement of Undisputed Fact ¶ 11.) Officer Burress concluded that Green was intoxicated and was the driver involved in the hit-and-run accident. (*Id.* ¶ 12.) The City of Medina officers placed Green under arrest. (*Id.*) When Green refused to comply with the officers' instructions, Chief Lowery and Officer McCallister assisted Officer Burress in handcuffing Green. (*Id.* ¶ 13.)[3] Upon her arrival in the driveway, Plaintiff recognized that her nephew was in the middle of the group of officers. (*Id.* ¶ 14.) Chief Lowery, Deputy Byrd, and Officer Burress ordered Plaintiff to return to her vehicle, and Plaintiff refused. (*Id.* ¶ 16.) Plaintiff asked "what is going on?" to which her nephew responded, "I don't know, Mama Dawn, they are arresting me for nothing." (*Id.* ¶¶ 17, 18.)

When Officer McCallister asked Plaintiff to leave the scene, Plaintiff answered, "No, this is my nephew, this is all of our properties." (*Id.* ¶ 19.) The video shows Officer McCallister again asking Plaintiff to leave; Plaintiff took one step back and then said she wanted to ask her nephew some questions. (*Id.* ¶ 20.) Officer McCallister put his hand on Plaintiff's right arm and again told her to go back to her car. (*Id.* ¶ 21.) Plaintiff told Officer McCallister to get his

---

[3] Plaintiff asserts that Deputy Byrd was also present and assisted in handcuffing Green, though Plaintiff cites no evidence to support her claim.

"hands off me" and refused to leave. (*Id.* ¶ 22.) At that point Officer McCallister put Plaintiff under arrest and began to place her in handcuffs. (*Id.* ¶¶ 23, 25.) Plaintiff asserts that Officer McCallister gripped her arm and shoulder forcefully as he went to apply the handcuffs while Deputy Byrd stood by. (Pl.'s Resp. to Def.'s Statement ¶ 23.) Officer McCallister put Plaintiff in his patrol car by forcing her to walk down the driveway. (Def.'s Statement of Undisputed Fact ¶ 26.)[4] While Deputy Byrd denies that he directed or assisted in any way in the effort to arrest Plaintiff, Plaintiff asserts that Deputy Byrd directed Officer McCallister to put Plaintiff in his patrol car. (Pl.'s Resp. to Def.'s Statement ¶ 29.) Plaintiff further asserts that Deputy Byrd filed the affidavit of complaint against her and otherwise failed to intervene when the other officers placed her under arrest, used excessive force, and detained her unreasonably. (*Id.*)

After sitting in the patrol car for 30 to 45 minutes, Plaintiff was joined in the car by Officer McCallister who informed Plaintiff she was under arrest for assaulting a police officer. (Def.'s Statement of Undisputed Fact ¶ 30.) Officer McCallister was the only officer on the scene to advise Plaintiff she was under arrest. (*Id.* ¶ 31.) Officer McCallister transported Plaintiff to the Gibson County Jail where Plaintiff was booked into the jail. (*Id.* ¶ 32.) That evening, Gibson County General Sessions Judge Mark Agree called the jail and ordered that Plaintiff be released on her own recognizance. (*Id.* ¶ 33.)[5] Plaintiff was released at 7:18 p.m. (*Id.*)

---

[4] Plaintiff adds that Deputy Byrd pushed her face down onto the trunk of the police car while Officer McCallister frisked her for weapons. (Pl.'s Resp. to Def.'s Statement ¶¶ 27, 28.) For reasons more fully explained below, the Court holds that this portion of Plaintiff's summary judgment affidavit is not admissible.

[5] Plaintiff states that Judge Agee's involvement is disputed because she has no personal knowledge of it. Be that as it may, Plaintiff has cited no evidence to show that a genuine dispute exists about Judge Agee's order.

6

Later that night, Deputy Byrd filed two affidavits of complaint with the Gibson County General Sessions Court, charging Plaintiff with resisting arrest and assaulting a police officer. (*Id.* ¶ 34.) The parties seem to dispute the timing of Deputy Byrd's affidavits: Deputy Byrd's statement of fact suggests he prepared the affidavits after Plaintiff was released; Plaintiff maintains she was not released until much later. It is undisputed that Plaintiff was never served with any warrants while she was still at the jail. (*Id.* ¶ 35.)

On April 2, 2013, the court conducted a preliminary hearing on the charges and dismissed them for lack of probable cause. (*Id.* ¶ 36.)[6] During the preliminary hearing, Judge Thomas L. Moore, presiding, heard testimony and reviewed the video recording of the episode, though he did not listen to the audio. (*Id.* ¶ 37.) Judge Moore found that there was no evidence of assault. (*Id.*)[7] The video never shows Deputy Byrd physically touching Plaintiff. (*Id.* ¶ 39.) Deputy Byrd was not involved in placing handcuffs on Plaintiff or removing the handcuffs from Plaintiff. (*Id.* ¶ 40.)[8]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp.*

---

[6] Plaintiff objects that the transcript of the hearing is inadmissible hearsay and lacks relevance to the claims in this suit. Because the Court finds it unnecessary to consider the transcript to decide the Motion for Summary Judgment, the Court need not decide whether it is admissible or relevant.

[7] Judge Moore remarked during the preliminary hearing that Plaintiff's actions appeared to be "classic" disorderly conduct. Plaintiff has objected to the admissibility of Judge Moore's comments from the bench. The Court notes Plaintiff's objection for the record. The Court finds it unnecessary to consider Judge Moore's comments to decide the issues presented in Deputy Byrd's Motion for Summary Judgment.

[8] Plaintiff did not actually respond to this statement of fact. As such, the Court finds it undisputed for purposes of the Motion for Summary Judgment.

*v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the "judge may not make credibility determinations or weigh the evidence." *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." *Lord v. Saratoga Cap., Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right," *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001), but creates a "species of tort liability" for the violation of rights guaranteed in the Constitution itself. *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). So the "threshold inquiry" under § 1983 is "to identify the specific constitutional right" at issue. *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). Then the court "must determine the elements of, and rules associated with, an action seeking damages for its violation." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 257–258 (1978)).

In this case the constitutional source of each of Plaintiff's claims is the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." *Id.* "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations and punctuation omitted). Plaintiff alleges that Deputy Byrd is liable under § 1983 for

false arrest, the use of excessive force in effecting the arrest, and malicious prosecution, all in violation of Plaintiff's Fourth Amendment rights. The Court considers each claim in turn.

**I. Plaintiff's Abandoned Claim for Section 1983 Malicious Prosecution**

As a procedural matter, Plaintiff has failed to respond to the argument raised in Defendant's opening brief for the dismissal of Plaintiff's constitutional claim for malicious prosecution. The Fourth Amendment applies to protect an individual from malicious prosecution under § 1983. *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) (citing *Spurlock v. Satterfield*, 167 F.3d 995, 1005–06 (6th Cir. 1999)). In order to make out a § 1983 malicious prosecution claim, a plaintiff must prove the following elements: "(1) a criminal prosecution was initiated against the plaintiff, and the defendant made influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Id.* (citing *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010)). Defendant's Motion asserts that Plaintiff cannot prove the elements necessary to make out the claim, specifically that Plaintiff cannot show a deprivation of her liberty other than the initial arrest. Plaintiff did not oppose or in any way respond to Defendant's argument.

"[A] plaintiff is deemed to have abandoned a claim when [she] fails to address it in response to a motion for summary judgment." *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568–69 (6th Cir. 2015) (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)). District courts in this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in a response to a motion for summary judgment. *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011); *Anglers of the*

*Au Sable v. U.S. Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008); *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999). *See also Clark v. City of Dublin*, No. 05-3186, 2006 WL 1133577, at *3 (6th Cir. Apr. 27, 2006) (where the appellant did not properly respond to the arguments asserted against his ADEA and ADA claims by the appellees in their motion for summary judgment, the appellant had abandoned his ADEA and ADA claims); *Conner v. Hardee's Food Sys.*, No. 01-5679, 2003 WL 932432, at *4 (6th Cir. Mar. 6, 2003) (finding that, "Because Plaintiffs failed to brief the issue before the district court . . . Plaintiffs abandoned their . . . claim."); *Hazelwood v. Tenn. Dept. of Safety*, No. 3:05-cv-356, 2008 WL 3200720, at *8 (E.D. Tenn. Aug. 5, 2008).

Defendant has raised a meritorious defense to Plaintiff's § 1983 claim for malicious prosecution. Based on Plaintiff's waiver of her claim and for the reasons stated in Defendant's opening memorandum, the Court holds that Defendant is entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claim for malicious prosecution. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for malicious prosecution under § 1983.

**II. Section 1983: Excessive Force**

Defendant next seeks summary judgment on Plaintiff's claim that officers used excessive force to remove her from the scene of her nephew's arrest, including grabbing her by the arms and shoulders, pushing her to one of the police cruisers, bending her across the trunk of the cruiser before frisking her for weapons, and applying the handcuffs too tightly. The Fourth Amendment protects against the use of excessive force in the course of an investigation or arrest. *Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 394

(1989)). The Court judges the use of force under an objective standard of reasonableness under all of the circumstances, allowing "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 395, 396-97. The Court examines factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The "ultimate inquiry is whether the totality of the circumstances justifies a particular sort of seizure.'" *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007) (quoting *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005)), as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

The Court holds that Plaintiff has failed to prove that Deputy Byrd is liable for the use of excessive force against her. Generally, an officer's "mere presence during [an arrest], without a showing of some direct responsibility, cannot suffice to subject [him] to liability." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). "To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'" *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). First, Plaintiff has not shown that Deputy Byrd actively participated in the use of excessive force against her. Plaintiff has adduced evidence about the actions of other Defendants and alleged how they used excessive force against her. Plaintiff has stipulated to the dismissal of her claims against those Defendants.

12

Plaintiff has not shown, however, that Deputy Byrd himself used any force against her or "actively participated in the use of excessive force." As such, Plaintiff cannot hold Deputy Byrd individually liable for the use of excessive force for active participation in using excessive force.

It is true that Plaintiff has submitted a summary judgment declaration (ECF No. 109-2) in which she avers that Deputy Byrd personally used force against her. Paragraph 15 of Plaintiff's declaration reads as follows: "When we got to the patrol car, I was thrown over the trunk and my face was held flat against the hood by Deputy Byrd while McCallister frisked me. I told Byrd and McCallister they were hurting me and the cuffs were too tight, but they made no effort to alleviate the pain." Viewing this evidence in a light most favorable to Plaintiff, this statement shows that Deputy Byrd used some degree of force against Plaintiff. But Plaintiff's declaration contradicts her original Complaint (ECF No. 1) where she alleged in paragraph 28 that Officer McCallister forced her head onto the trunk of the car before he frisked her for weapons. Plaintiff is bound by the admissions in her pleadings and "cannot create a factual issue by subsequently filing a conflicting affidavit." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000) (citations omitted). As such, the Court will disregard Plaintiff's inconsistent claim at summary judgment that Deputy Byrd used force against her during the frisk. Therefore, the Court holds that Plaintiff has not shown that Deputy Byrd actively participated in the use of excessive force against her.

Second, Plaintiff has argued that Deputy Byrd was the only officer present with the jurisdiction to place her under arrest and that Deputy Byrd had authority to stop the other officers from using excessive force against her and arresting her. Plaintiff's theory is akin to a kind of vicarious or supervisory liability to hold Deputy Byrd liable for the acts of others. But Plaintiff has failed to show that Deputy Byrd had control as a supervisor over the conduct of the other

officers. A supervisor can be personally liable under § 1983 if a plaintiff can prove that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it" or at the very least "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (quoting *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)). Plaintiff cannot even show as a threshold matter that Deputy Byrd supervised any of the other officers on the scene. In fact, Deputy Byrd was the only member of the Gibson County Sheriff's Department at the scene, and all of the other officers were members of the Medina Police Department. Plaintiff cannot prove then that Deputy Byrd had any supervisory control over the actions of the other officers. As a result, Deputy Byrd cannot be liable for the acts of other parties.

In addition to showing that Deputy Byrd actively participated in the use of excessive force or had supervisory power over the officers who allegedly used excessive force, Plaintiff could also show that Deputy Byrd had a duty to protect her from the use of excessive force. *Binay*, 601 F.3d at 650. A § 1983 plaintiff may hold an officer liable for excessive force if she can prove that the officer "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring." *Burgess*, 735 F.3d at 475 (quoting *Turner*, 119 F.3d at 429). However, the Court holds that Plaintiff has not properly raised a failure to protect theory of liability. Plaintiff has not explicitly raised a failure to protect theory of liability in her pleadings and has not requested leave to amend her pleadings to add such a claim. In her memorandum, Plaintiff identifies two kinds of excessive force Deputy Byrd failed to stop: the assaults allegedly committed primarily by Officer McCallister and the pain caused by tight handcuffing. But none of either party's summary

14

judgment submissions refer to such a duty or the legal standards for proving a claim of this kind. The Court would decline to consider such a theory for this reason alone.

Furthermore, even if the Court liberally construed the arguments raised in Plaintiff's summary judgment brief, the Court would still decline to consider a failure to protect theory of liability. The Sixth Circuit has held that it is improper for a plaintiff to raise "a new legal claim for the first time in response to the opposing party's summary judgment motion" insofar as "it denies a defendant sufficient notice of what claims to investigate." *West v. Wayne Cnty.*, 672 F. App'x 535, 541 (6th Cir. 2016) (citing *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2723 (3d ed. Supp. 2005)). And this restriction is even more critical at summary judgment, "after a plaintiff has conducted discovery and has had the opportunity to amend the complaint and raise additional theories." *Id.* (citing *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 665 (6th Cir. 2012)). The Complaint does not allege a duty to protect theory. Therefore, the Court concludes that Plaintiff has not properly raised a duty to protect theory to hold Deputy Byrd liable for the use of excessive force.

The Court pauses to note a separate issue related to Plaintiff's excessive force claim against Deputy Byrd. Plaintiff's Complaint alleges Deputy Byrd acted in concert with the other officers and conspired with them to violate Plaintiff's civil rights in violation of § 1983. Compl. ¶¶ 49, 50 ("Defendants without probable cause or reasonable belief that their actions were justified conspired to arrest, imprison, and prosecute Plaintiff . . . ."). A plaintiff can establish a § 1983 claim for civil conspiracy by proving "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016)

(citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011). However, Plaintiff has not made any of these showings or even argued in her summary judgment brief that she can prove her initial allegations of a civil conspiracy. As such, the Court holds that Plaintiff has waived this theory of liability against Deputy Byrd. For all of these reasons, the Court holds that Deputy Byrd is entitled to judgment as a matter of law on Plaintiff's excessive force claim.

**III. Section 1983: False Arrest**

Finally, Defendant seeks summary judgment on Plaintiff's § 1983 claim for false arrest. The Fourth Amendment protects against arrest without probable cause. *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) (citation omitted). To establish a § 1983 claim for false arrest, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015) (quoting *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)). Probable cause simply means a "reasonable probability" that "under the totality of the circumstances" a suspect has committed a crime. *Courtright*, 839 F.3d at 521.[9] Even so, "[t]he Constitution does not guarantee that only the guilty

---

[9] Plaintiff's response in opposition to the Motion for Summary Judgment separately argues the merits of her claim for false imprisonment based on Tennessee's cite and release law. To the extent that Plaintiff is alleging a § 1983 false imprisonment claim for the violation of her rights under the U.S. Constitution, a violation of a state's cite and release law does not per se rise to the level of a Fourth Amendment violation. *Virginia v. Moore*, 553 U.S. 164, 176 (2008) (holding that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections"). Additionally, the Court's analysis of Plaintiff's false imprisonment claim largely tracks its analysis for the false arrest claim. "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "False arrest is synonymous with false imprisonment where one confines another purporting to act by authority of law which does not in fact exist." *Trakhtenberg v. Cnty. of Oakland*, 661 F. App'x 413, 419 (6th Cir. 2016) (quoting *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988)).

To the extent that Plaintiff is arguing the merits of a claim for false imprisonment under Tennessee law, the Court has already declined to exercise supplemental jurisdiction over

will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Plaintiff argues that the officers falsely arrested her because they lacked probable cause to charge her with failure to obey a lawful command or assaulting an officer. According to Plaintiff, Deputy Byrd is liable for false arrest because he was the only officer present with the legal authority to make an arrest outside of the Medina city limits and that he was a participant in the arrest. Deputy Byrd now seeks summary judgment on the claim, arguing that he did not arrest Plaintiff and that even if the Court finds otherwise, the officers had probable cause to charge Plaintiff with another offense, disorderly conduct.

The Court holds that Deputy Byrd is entitled to judgment as a matter of law because Plaintiff cannot show that he placed her under arrest. Under § 1983, a defendant "cannot be held liable for the conduct of another," and each defendant's liability must be individually. *Apsey v. Chester Twp.*, 608 F. App'x 335, 339 (6th Cir. 2015) (citing *Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015)). It follows that the "proper defendants in an action under § 1983 . . . are the law enforcement officers who were personally involved in the incident alleged to have resulted in a violation of the plaintiff's civil rights." *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (citation omitted). In this case, Plaintiff has failed to adduce evidence that Deputy Byrd arrested her.

The undisputed facts show that Officer McCallister and Chief Lowery used physical force to move Plaintiff away from the scene of her nephew's arrest. Officer McCallister then placed Plaintiff in handcuffs, frisked her for weapons, and sat in her the back of the patrol car. Not surprisingly and perhaps most importantly, Officer McCallister was the only officer to

---

Plaintiff's state law claims in this case. For these reasons the Court will not address Plaintiff's false imprisonment claim further.

17

advise Plaintiff she was under arrest. The evidence further shows that Officer McCallister transported Plaintiff to the Gibson County Jail and booked her into the jail. In sum, Officer McCallister detained Plaintiff, restrained her liberty and freedom of movement, and finally arrested her. For his part, Deputy Byrd was apparently only present on the scene and had no "direct responsibility for" the arrest. *Binay*, 601 F.3d at 650 (quoting *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)). Without proof that Deputy Byrd had direct responsibility for Plaintiff's arrest, Plaintiff cannot make out a claim against Deputy Byrd for false arrest.

To escape this conclusion, Plaintiff has adduced evidence that the Medina officers requested the assistance of a sheriff's deputy and that Deputy Byrd was dispatched to the scene. According to Plaintiff, Deputy Byrd was the only law enforcement officer present with jurisdiction to make an arrest. In fact, Plaintiff avers that Deputy Byrd told Officer McCallister to put Plaintiff in a patrol car. It is true that Deputy Byrd ultimately prepared the affidavit of complaint for the charges against Plaintiff. But none of this proof establishes that Deputy Byrd was the officer who falsely arrested Plaintiff, as she claims. The fact that the Medina officers requested a sheriff's deputy and the Gibson County Sheriff's Department dispatched Deputy Byrd merely explains Deputy Byrd's presence on the scene, and not whether he was directly responsible for the arrest. The Court finds it unnecessary to decide the limits of the Medina officers' authority to place Plaintiff under her arrest. Plaintiff's theory of the case is that the officers lacked probable cause to arrest her, and any claim that the officers also lacked the authority under Tennessee law to arrest would lie only against the officers acting outside of their authority, not Deputy Byrd. As for the affidavit of complaint, Deputy Byrd prepared the affidavit some hours after Officer McCallister had placed Plaintiff under arrest and taken her to

the jail. In other words, the false arrest was complete upon Officer McCallister's handcuffing her, putting her in the police car and transporting her to the jail. The Court holds that Deputy Byrd's involvement in the case simply does not make out a claim for false arrest. Therefore, Defendant's Motion is **GRANTED** on this claim.

## CONCLUSION

The Court concludes that Deputy Byrd is entitled to judgment as a matter of law on all of the remaining federal claims against him. Therefore, his Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

            **s/ S. Thomas Anderson**
             S. THOMAS ANDERSON
             CHIEF UNITED STATES DISTRICT JUDGE

             Date: June 21, 2017.